JORDAN v DEPARTMENT OF CORRECTIONS

Docket No. 91293. Submitted June 25, 1987, at Lansing. Decided December 8, 1987.

Ronald L. Jordan, a prison inmate, brought an action in Ingham Circuit Court seeking a declaration that he was entitled to be given a reasonable quantity of postage stamps at no cost pursuant to an administrative rule of the Department of Corrections. The trial court, Jack W. Warren, J., initially granted summary disposition in plaintiff's favor, but subsequently ruled that plaintiff was disqualified from receiving postage stamps under the terms of a Department of Corrections policy directive limiting stamp allotments to prisoners who are indigent. Plaintiff sought and was granted a delayed application for leave to appeal.

The Court of Appeals held:

1. The Department of Corrections is an agency for purposes of the Administrative Procedures Act and is therefore subject to the provisions of the APA when it adopts administrative rules.

2. Under the APA, a directive by an agency which affects the rights of, or procedures and practices available to, the public is valid only if adopted as a rule. Prison inmates are members of the public for purposes of the APA and since the policy directive at issue in this case affects a right of, or procedure and practice available to, prison inmates under the terms of 1979 AC, R 791.6603(2), the policy directive is invalid.

3. Under the APA, a communication by an agency which serves as an interpretive statement need not be adopted as an administrative rule. The policy directive in this case cannot be considered an interpretive statement of 1979 AC, R 791.6603(2) because it is, in fact, inconsistent with the rule. Rule 603

REFERENCES

Am Jur 2d, Administrative Law §§ 92-122.

Am Jur 2d, Penal and Correctional Institutions §§ 45-60, 189.

What constitutes "good cause" under provision of Administrative Procedure Act (5 USCS sec. 553(d)(3)) allowing agency rule to become effective less than 30 days after publication. 55 ALR Fed 880.

provides that a reasonable amount of postage stamps be alloted to all prison inmates, while the policy directive limits the allotment of stamps to indigent inmates.

Reversed and remanded for entry of judgment in plaintiff's favor and for a calculation of the amount of postage to be credited to plaintiff for his use.

T. K. BOYLE, J., concurred separately and stated that he agreed with the majority's reasoning in the absence of citations of authority and argument to the contrary by the Department of Corrections, but expressed a misgiving that Rule 603 was ever intended to provide prison inmates possessed of considerable assets, such as plaintiff, with free postage.

1. PRISONS AND PRISONERS — ADMINISTRATIVE LAW — ADMINISTRATIVE PROCEDURES ACT — DEPARTMENT OF CORRECTIONS.

The Department of Corrections is subject to the rulemaking requirements of the Administrative Procedures Act when it promulgates a directive which affects the rights of, or procedures and practices available to, the public or a directive which is inconsistent with, or goes beyond the scope of, an existing administrative rule (MCL 24.207[g] and [h], 24.313; MSA 3.560[107][g] and [h], 3.560[213]).

2. PRISONS AND PRISONERS — ADMINISTRATIVE LAW — ADMINISTRATIVE PROCEDURES ACT.

Prison inmates are members of the general public for purposes of the rulemaking provisions of the Administrative Procedures Act as it applies to the Department of Corrections (MCL 26.201 *et seq.*; MSA 3.560[101] *et seq.*).

Ronald C. Jordan, in propria persona.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Edgar L. Church,* Assistant Attorney General, for Department of Corrections.

Before: WAHLS, P.J., and R. M. MAHER and T. K. BOYLE,\* JJ.

PER CURIAM. Plaintiff, a state penal inmate, filed for declaratory relief, asserting that he was enti-

\* Recorder's Court judge, sitting on the Court of Appeals by assignment.

tled to be given a reasonable quantity of postage stamps under the authority of an administrative rule. On February 1, 1983, Ingham Circuit Judge Jack W. Warren granted summary disposition to plaintiff. Defendant was subsequently granted relief from the order when it was shown that plaintiff was not indigent and therefore not entitled to free postage stamps under the language of a Department of Corrections policy directive. Plaintiff's motion for reconsideration was denied, and delayed application for leave to appeal to this Court was granted. We reverse the circuit court's grant of relief to defendant from the February 1, 1983, order on the basis that the relevant policy directive limiting free postage to inmates who are indigent is invalid because it is used by the Department of Corrections in lieu of a properly promulgated administrative rule and both affects the rights of the public and does more than merely explain the law.

I

Our review of the record in this case reveals that on February 24, 1981, plaintiff filed a complaint seeking a declaratory judgment against the Michigan Department of Corrections based on defendant's failure to provide plaintiff with "a reasonable quantity of postage," as required by 1979 AC, R 791.6603(2). Plaintiff also filed a motion to waive costs and fees, and an affidavit stating that he held only $18 in cash and no other assets. Plaintiff's motion for summary disposition was granted by Judge Warren, and plaintiff was declared entitled to a reasonable quantity of postage at no expense as of February 1, 1983, the date of the order. On November 27, 1985, plaintiff filed a motion for an order of contempt and order to show

cause, alleging that, despite his requests, he had not received his ten-stamp per month allotment from June to September, 1985. He prayed for an award of four month's worth of postage allowance and $50 in costs, and that defendant be found in contempt of court.

In its answer filed in response to plaintiff's motion, defendant explained that plaintiff had not received his monthly allotment of ten stamps during the months in question due to plaintiff's intervening transfer from the Huron Valley Men's Facility in Ypsilanti to the Marquette Branch Prison in Marquette, and noted that the latter institution had been directed to credit plaintiff's account with $8.80, representing ten first-class postage stamps for each month from June through September, 1985. In addition, defendant filed a motion for relief from the February 1, 1983, order on the basis of the Michigan Department of Corrections policy directive providing that only prisoners who meet the department's definition of indigency must be given a maximum of ten first-class postage stamps per month for each month that the prisoner maintains indigency status. PD-BCF-63.03. Defendant attached to its motion a copy of an order entered on May 22, 1985, by Ingham Circuit Judge Thomas L. Brown denying plaintiff's request in a different case for copies of transcripts at public expense on the basis of indigency. According to Judge Brown's order, plaintiff reported having financial assets in excess of $1,750,000.

On January 2, 1986, Judge Warren denied plaintiff's motion for an order of contempt and order to show cause, but granted defendant's motion for relief from the February 1, 1983, order, finding that, based on Judge Brown's order, plaintiff was not indigent, and clarifying that "this Court never

intended to order [that] postage stamps [be] given to a non-indigent inmate." Judge Warren, in granting relief from the order, specifically relied on PD-BCF-63.03, which was signed on May 13, 1983, by then director of the Michigan Department of Corrections Perry M. Johnson and which became effective on June 6, 1983. After plaintiff's motion for reconsideration was denied, we granted plaintiff's motions for delayed application for leave to appeal and for waiver of fees and costs.

II

Plaintiff argues on appeal that the circuit court erred in ruling that the administrative rule requiring free postage for prison inmates applies only to indigent prison inmates pursuant to a Michigan Department of Corrections policy directive. We agree.

The director of the Michigan Department of Corrections may promulgate rules pursuant to the Administrative Procedures Act, MCL 24.201 *et seq.*; MSA 3.560(101) *et seq.;* MCL 791.206; MSA 28.2276. The department is an "agency" for purposes of the APA, and thus is subject to its provisions. *Martin v Dep't of Corrections,* 424 Mich 553, 556; 384 NW2d 392 (1986); MCL 24.313; MSA 3.560(213). Specified procedures must be followed when an agency subject to the APA adopts a rule. See, e.g., MCL 24.241, 24.242; MSA 3.560(141), 3.560(142). Substantial noncompliance with certain procedural requirements in the APA works to invalidate a rule. MCL 24.243; MSA 3.560(143). Proposed rules are subject to the approval of the Legislature. MCL 24.245; MSA 3.560(145). The relevant policy directive in this case was not issued in accordance with the procedural requirements in the APA. That policy directive provides, in pertinent part:

Prisoners who meet the Department's definition of indigency, as defined by PD-BCF-20.03, shall be provided with a maximum of ten (10) postage-free first class letters (one ounce or less), or the equivalent, each month they have indigency status. [PD-BCF-63.03.]

In addition, an agency is prohibited from adopting a guideline or policy directive in lieu of a rule. MCL 24.226; MSA 3.560(126). Thus, the policy directive at issue in this case is valid only if it is not a rule within the meaning of the APA, which defines "rule" as follows:

"Rule" means an agency regulation, statement, standard, policy, ruling or instruction of general applicability, which implements or applies law enforced or administered by the agency, or which prescribes the organization, procedure or practice of the agency, including the amendment, suspension or rescission thereof, but does not include the following:

* * *

(g) An intergovernmental, interagency or intra-agency memorandum, directive or communication which does not affect the rights of, or procedures and practices available to, the public.

(h) A form with instructions, an interpretive statement, a guideline, an informational pamphlet or other material which in itself does not have the force and effect of law but is merely explanatory. [MCL 24.207; MSA 3.560(107).]

Accordingly, if it can be shown that the policy directive allowing free postage allotments only to inmates who are indigent affects the rights of the public or constitutes more than a mere interpretive statement or explanatory guideline without the force and effect of law, then it is not in fact a policy directive but a rule which, because it should

have been promulgated in accordance with the procedures set forth in the APA, is invalid.

A

In *Schinzel v Dep't of Corrections,* 124 Mich App 217; 333 NW2d 519 (1983), this Court found invalid a policy directive of the Michigan Department of Corrections prohibiting inmates' receipt of postage stamps through the mail because "the policy directive directly affects and interferes with the rights and practices available to the [general] public," and therefore had to be promulgated as a rule in accordance with the procedures enunciated in the APA. *Id.,* p 219. Specifically not addressed was the question whether prison inmates are members of the "public" under MCL 24.207(g); MSA 3.560(107)(g). Thereafter, panels of this Court disagreed on this issue. Cf. *Kirkeby v Dep't of Corrections,* 141 Mich App 148; 366 NW2d 28 (1985) (inmates are not members of the public), with *Martin v Dep't of Corrections,* 140 Mich App 323, 330; 364 NW2d 322 (1985), affd 424 Mich 553; 384 NW2d 392 (1986); *Thompson v Dep't of Corrections,* 143 Mich App 29, 31; 371 NW2d 472 (1985), conflicts order den 422 Mich 1238 (1985) (inmates are members of the public.) In *Martin, supra,* p 560, the Supreme Court agreed with the prevailing view in this Court that prison inmates are members of the public for purposes of MCL 24.207(g); MSA 3.560(107)(g). Thus, since prison inmates have a right to "a reasonable quantity of . . . postage" at no expense, 1979 AC, R 791.6603(2), and since prison inmates are members of the public under the APA, *Martin, supra,* we reject the argument that the policy directive at issue in this case need not be promulgated as a rule under the exception found in MCL 24.207(g); MSA

3.560(107)(g), which excludes from the definition of the term "rule," among other things, any intra-agency directive not affecting the rights of the public.

**B**

We also find that the policy directive at issue in this case does not constitute an "interpretive statement" exempt from the rule promulgation requirements under MCL 24.207(h); MSA 3.560(107)(h).

A policy directive cannot be considered an "interpretive statement" of a rule if it is in fact inconsistent with the rule or contains provisions which go beyond the scope of the rule. *Schinzel, supra,* pp 220-221; *Thompson, supra,* p 32; *Spruytte v Walters,* 753 F2d 498, 504 (CA 6, 1985), cert den 474 US 1054; 106 S Ct 788; 88 L Ed 2d 767 (1986). In *Schinzel,* for example, this Court rejected an argument that the policy directive prohibiting inmates from receiving postage stamps through the mail was an interpretive statement of the rule prohibiting the sending of correspondence containing "contraband" to prison inmates. The *Schinzel* Court explained:

> Although there is no doubt that defendant Department of Corrections can refuse to deliver mail containing contraband, that term is not defined anywhere in the department rules. "Contraband" is generally understood to be goods or merchandise whose importation, exportation, or possession is prohibited by law. Black's Law Dictionary (rev 4th ed, 1968), p 393. Thus, the defendants' policy directive equating postage stamps, the importation, exportation, or possession of which is clearly not prohibited by law, with contraband cannot be deemed an interpretive statement of what "contraband" means; it changes that term's very definition. [124 Mich App 220-221.]

Similarly, in this case, the policy directive changes the very meaning of the term "resident" as it is used in the rule to signify not merely prison inmates but *indigent* prison inmates. Nowhere in the rule is the financial status of a prison inmate set forth as a consideration to free-postage entitlement.

1979 AC, R 791.6603(2) provides that "[a] resident shall be provided, at no individual expense, with a reasonable quantity of writing materials and postage." "Resident" is defined in 1979 AC, R 791.1101(i) as "a client assigned to a department facility." A "client," in turn, is defined in 1979 AC, R 791.1101(a) as "a person committed to the jurisdiction of the Department." Clearly, Rule 791.6603(2) and the ancillary definitional provisions relevant to it do not limit the right to receive free postage to inmates who are indigents, as does the policy directive at issue in this case, PD-BCF-63.03. In construing administrative rules, courts apply principles of statutory construction. *GMC v Bureau of Safety & Regulation,* 133 Mich App 284, 292; 349 NW2d 157 (1984). However, if the agency's rule is unambiguous on its face, no interpretation is necessary and the court must give effect to the agency's intention as clearly expressed. *Id.* In this case, we find the meaning of Rule 791.6603(2) to be unambiguous—namely, the providing of a reasonable amount of free postage to prison inmates. Thus, we decline to treat the policy directive as an interpretive statement of this rule because the former, by requiring the additional criterion of indigency in order for an inmate to obtain the free postage to which he is entitled under the agency's rule, essentially modifies that rule's unambiguous meaning.

III

Having determined that the circuit court erred

so as to require reversal in granting the department relief from the February 1, 1983, order requiring a reasonable amount of free postage to be provided to plaintiff under the authority of 1979 AC, R 791.6603(2), we need not address the remaining issues raised by plaintiff regarding whether Judge Warren erred in relying on the order of Judge Brown to support a finding that plaintiff was not indigent and whether Judge Warren abused his discretion in granting defendant's motion for relief from the February 1, 1983, order where defendant's motion for relief was filed approximately thirty-four months after the issuance of the February 1, 1983, order.

IV

While limiting the availability of free postage to inmates who are indigent may be desirable, such a limitation must be established, in light of the breadth of the existing rule, by way of an administrative rule or modification, and not by way of a policy directive. A policy directive may not be used in lieu of a rule. Since the policy directive in the present case affected the rights of the public, and changed, rather than merely explained, the terms of the rule it purported to interpret, we find that the policy directive was impermissibly used by the department in lieu of a rule. Accordingly, we must reverse the circuit court's grant of relief to defendant from the February 1, 1983, order. Plaintiff is entitled to his reasonable allotment of free postage.

Reversed and remanded for entry of judgment in plaintiff's favor and calculation of the amount of postage to be credited to plaintiff for his use.

T. K. Boyle, J. *(concurring).* We hold today that a penal inmate presumptively possessed of assets in excess of $1,750,000 is nevertheless entitled to free postage in a reasonable amount. I tend to doubt that the rule, 1979 AC, R 791.6603(2), was ever intended to compel that result, but I have great difficulty in arguing with the logic set forth in the majority opinion.

If I were to attempt to be innovative or creative in posing a potential dissent to the majority opinion, I might question the willingness of the appellate courts of this state to so willingly import into statutes a legal cause of action based on rule-making by an agency. The promulgation and publication of rules by agencies is healthy, not only for the public, but for the agencies themselves. It is of the essence of democratic self-government that the rule-maker be subject to the law. Exactly to the extent that rule-making either paralyzes an agency or leads to unintended and unwarranted results, the impulse toward rule-making will be diminished. Some foundational questions ought always to be asked. Is the rule hortatory, or is it intended to create rights in third parties? Is the person claiming a benefit under the rule within the class of persons intended to be protected? The purpose of these and other foundational questions is to ensure that law is applied consonant with its purpose. When the application of law requires a result that appears unwarranted, it is frequently because that result was unintended by the lawgiver.

A second possible issue one could raise respecting the majority opinion is whether prison inmates are members of the public under MCL 24.207(g); MSA 3.560(107)(g) for purposes germane to this case.

A third possible issue might address and develop the history and implementation of 1979 AC, R 791.6603(2) as well as that of the policy directive (PD-BCF-63.03) at issue in this case. Perhaps, a record could have been made tending to show that the policy directive was "merely explanatory" of the original rule and fully comported with its purpose and intent. See MCL 24.207(h); MSA 3.560(107)(h).

The problem with all these potential issues is that they were not briefed or argued by the Department of Corrections. This case involves issues of current interest in this Court and in our Supreme Court. Plaintiff Ronald Jordan presented to this Court authority supporting his claim.

This Court, after a conscientious exploration of the record and the law, feels constrained to reach the result it does today. If the Department of Corrections sees no need to challenge the arguments and authority presented to this Court by plaintiff, I will not undertake that task.

I concur.