## PYKE v DEPARTMENT OF SOCIAL SERVICES

Docket No. 111148. Submitted January 16, 1990, at Lansing. Decided March 19, 1990.

John Pyke applied to the Department of Social Services for food stamp and general assistance benefits. At that time, his wife, Mary Pyke, was receiving federal Supplemental Security Income benefits of $369 per month. John Pyke's application for general assistance benefits was denied, in part because the couple's combined income exceeded the eligibility limits for general assistance benefits. The Pykes filed a petition for review of the DSS decision in Oakland Circuit Court. That court, Robert L. Templin, J., affirmed the decision of the DSS. The Pykes appealed, arguing that the DSS' policy of considering one spouse's receipt of SSI benefits for purposes of assessing the eligibility of the other spouse for general assistance benefits is invalid because it creates an improper irrebuttable presumption in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution, it is preempted by provisions of the Social Security Act, it deprives Mary Pyke of her property without due process of law, and it violates the rule-making requirements of the Administrative Procedures Act.

The Court of Appeals *held:*

1. The rational basis test, not the irrebuttable presumption analysis, is the appropriate test to utilize in reviewing constitutional challenges to aspects of social welfare programs. Thus, where welfare classifications, presumptions, and standards of need have a rational basis, they will be sustained against constitutional challenges. The DSS' policy of considering one spouse's receipt of SSI benefits for purposes of assessing the eligibility of the other spouse for general assistance benefits is rationally related to the legitimate goal of efficiently allocating appropriated state welfare funds. No due process violation results from the DSS' policy.

2. The Pykes' argument that the challenged DSS policy is

REFERENCES

Am Jur 2d, Welfare Laws §§ 26, 27, 53, 55, 59.

See the Index to Annotations under Food Stamps; Poor Persons; Social Security.

invalid under the Supremacy Clause of the United States Constitution because the policy violates the "benefit level" provision of the Social Security Act is rejected. The policy does not violate the Supremacy Clause.

3. The DSS' policy does not violate the antialienation provision of the Social Security Act, which provides that none of the money paid or payable under the Social Security Act is subject to execution, levy, attachment, garnishment, or other legal process. The DSS' policy does not deprive Mary Pyke of her SSI benefits, and it cannot be concluded that the mere consideration of SSI benefits for purposes of determining general assistance eligibility constitutes a form of legal process as that term was intended by Congress.

4. The contention that the DSS' policy unconstitutionally deprives Mary Pyke of her property without due process of law is without merit. The policy does not affect Mary Pyke's receipt of or entitlement to SSI benefits, nor does it create any legal obligations compelling her to utilize the benefits for any particular purposes. The SSI benefits cannot be considered "taken" merely because an applicant is found ineligible for state welfare assistance pursuant to an otherwise permissible policy.

5. The claim that the subject policy is invalid because it was not promulgated pursuant to the required rule-making procedures set forth in the Administrative Procedures Act is rejected. The policy was established pursuant to the "permissible statutory powers" of the DSS and, therefore, it is not subject to the rule-making requirements of the APA.

6. The argument that the DSS policy is invalid because it contravenes the administrative rule limiting DSS consideration to income and resources available in fact for current use is also rejected. The SSI benefits are readily available to the Pykes for the purchase of food, clothing, and shelter and do not artificially depreciate a recipient's need.

Affirmed.

SHEPHERD, P.J., dissented. Without reaching the other issues, he would hold that the subject policy is invalid because it was not promulgated pursuant to the required rule-making procedures set forth in the Administrative Procedures Act. He would remand to the circuit court for that court to order the DSS to determine eligibility without reference to the spouse's SSI benefits.

1. SOCIAL SERVICES — WELFARE PROGRAMS — CONSTITUTIONAL LAW — RATIONAL BASIS TEST.

The rational basis test is the appropriate test to utilize in resolv-

ing constitutional challenges to aspects of social welfare programs; thus, where welfare classifications, presumptions, and standards of need have a rational basis, they will be sustained against constitutional challenges.

2. SOCIAL SERVICES — GENERAL ASSISTANCE BENEFITS — SSI BENEFITS.

The Department of Social Service's policy of considering one spouse's receipt of Supplemental Security Income benefits in assessing the eligibility of the other spouse for general assistance benefits is rationally related to the legitimate goal of efficiently allocating appropriated state welfare funds, and the enactment of such a policy constitutes a legitimate attempt on the part of the state to limit its expenditures for public assistance.

3. SOCIAL SERVICES — GENERAL ASSISTANCE BENEFITS — SSI BENEFITS — SUPREMACY CLAUSE.

The Department of Social Service's policy of considering one spouse's receipt of Supplemental Security Income benefits when determining the other spouse's income level in order to determine eligibility for general assistance benefits has no effect on the amount of SSI benefits received and does not conflict or interfere with the Social Security Act; the policy is not in violation of the Supremacy Clause of the United States Constitution (US Const, art VI, § 2).

4. SOCIAL SERVICES — GENERAL ASSISTANCE BENEFITS — SSI BENEFITS.

The Department of Social Service's policy of considering one spouse's receipt of Supplemental Security Income benefits in assessing the eligibility of the other spouse for general assistance benefits does not violate the Social Security Act's antialienation provision that none of the money paid or payable under the Social Security Act is subject to execution, levy, attachment, garnishment, or other legal process; the policy of the DSS does not deprive the SSI recipient of any SSI benefits, and the mere consideration of SSI benefits for purposes of determining general assistance eligibility does not constitute a form of legal process as that term is used in the antialienation provision (42 USC 407[a]).

5. SOCIAL SERVICES — GENERAL ASSISTANCE BENEFITS — SSI BENEFITS — DUE PROCESS.

The Department of Social Service's policy of considering one spouse's receipt of Supplemental Security Income benefits in assessing the eligibility of the other spouse for general assistance benefits does not unconstitutionally deprive the SSI recipient of her property without due process of law; the policy does

not affect the SSI recipient's receipt of or entitlement to SSI benefits nor does it create any legal obligations compelling her to utilize the benefits for any particular purposes; such benefits cannot be considered "taken" merely because an applicant is found ineligible for state welfare assistance pursuant to an otherwise permissible policy.

6. SOCIAL SERVICES — GENERAL ASSISTANCE BENEFITS — SSI BENEFITS — ADMINISTRATIVE PROCEDURES ACT.

The Department of Social Service's policy of considering one spouse's receipt of Supplemental Security Income benefits in assessing the eligibility of the other spouse for general assistance benefits was established pursuant to the department's permissive statutory powers; therefore, the fact that the policy was not promulgated pursuant to the rule-making procedures set forth in the Administrative Procedures Act does not render the policy invalid (MCL 24.207; MSA 3.560[107]).

Michigan Legal Services (by *Susan K. McParland* and *Susan Shernit*), for petitioners.

*Frank J. Kelley*, Attorney General, *Louis J. Caruso*, Solicitor General, and *John M. Konwinski* and *Rosendo Asevedo, Jr.*, Assistant Attorneys General, for respondent.

Before: SHEPHERD, P.J., and MAHER and SULLIVAN, JJ.

MAHER, J. Petitioners appeal as of right from an Oakland Circuit Court order affirming the decision of a hearing officer, which upheld the Department of Social Services' denial of general assistance benefits. In this appeal, petitioners challenge a DSS policy in which one spouse's receipt of federal Supplemental Security Income benefits is taken into consideration when assessing the eligibility of the other spouse for general assistance benefits under the Social Welfare Act. MCL 400.1 *et seq.*; MSA 16.401 *et seq.* We affirm.

John and Mary Pyke live together as husband and wife. On August 10, 1987, John Pyke applied

to respondent, DSS, for food stamp and general assistance benefits. At the time he applied, Mary Pyke was receiving SSI benefits of $369 a month. The application for general assistance benefits was denied, in part, because the Pykes' combined income exceeded the eligibility limits for general assistance benefits.

Eligibility and benefit levels for the various state welfare programs are determined pursuant to several DSS policies and criteria listed in the department's Program Eligibility Manual. In some instances, eligibility is dependent, in part, upon the circumstances of others with whom an applicant lives. For example, pursuant to DSS policy, spouses who live together must be included in the same general assistance group and all income received by the group is countable unless specifically excluded. Because they reside together as husband and wife, Mary and John Pyke were treated as one group and all income received by either of them, including Mary Pyke's SSI income, was counted in assessing John Pyke's eligibility for general assistance benefits. Thus, the denial of John Pyke's application for general assistance benefits was based, in part, upon consideration of Mary Pyke's receipt of SSI benefits.

In this appeal, petitioners challenge the denial of general assistance benefits to John Pyke. In doing so, petitioners contend that the DSS' policy of considering one spouse's receipt of SSI benefits, for purposes of assessing the eligibility of the other spouse for general assistance benefits, is invalid because: (1) it creates an improper irrebuttable presumption in violation of the Fourteenth Amendment to the United States Constitution; (2) it is preempted by provisions of the Social Security Act, 42 USC 601 *et seq.*; (3) it deprives Mary Pyke of her property without due process of law; and (4)

it violates the rule-making requirements of the Administrative Procedures Act. We reject each of these arguments and affirm the decision of the hearing officer.

I

We begin by addressing petitioners' argument that respondent's policy is invalid because it employs an irrebuttable presumption in contravention of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Specifically, petitioners contend respondent's policy is invalid because it conclusively presumes that both appellants can be supported on Mary Pyke's SSI income, regardless of her actual ability to support the two of them.

In analyzing this contention, we disagree with petitioners that an irrebuttable presumption analysis is the appropriate standard of review. The Supreme Court has indicated that, with respect to challenges to aspects of social welfare programs, the "rational basis test" is the appropriate test to utilize. *Weinberger v Salfi,* 422 US 749, 768; 95 S Ct 2457; 45 L Ed 2d 522 (1975). Also see *Califano v Goldfarb,* 430 US 199, 210; 97 S Ct 1021; 51 L Ed 2d 270 (1977), and *Jackson v O'Bannon,* 633 F2d 329, 339 (CA 3, 1980). Emphasizing the noncontractual nature of benefits under social welfare programs, the *Weinberger* Court, quoting from *Fleming v Nestor,* 363 US 603, 611; 80 S Ct 1367; 4 L Ed 2d 1435 (1960), stated:

> [T]he Due Process Clause can be thought to interpose a bar only if the statute manifests a patently arbitrary classification, utterly lacking in rational justification. [*Weinberger, supra,* p 768.]

Thus, where welfare classifications, presumptions,

and standards of need have a rational basis, they will be sustained against constitutional challenges. *Jackson, supra,* p 339. In this case, we find respondent's policy to be rationally based.

Funds for the various state welfare programs, including general assistance, are appropriated from the general revenues of the state. MCL 400.18; MSA 16.418. Allocation of general assistance benefits is made on the basis of need. MCL 400.18; MSA 16.418. A state has a valid interest in preserving the fiscal integrity of its programs and may legitimately attempt to limit its expenditures for public assistance. *White v Dep't of Social Services,* 20 Mich App 481, 485; 174 NW2d 315 (1969), lv den 383 Mich 768 (1970), quoting *Shapiro v Thompson,* 394 US 618, 633; 89 S Ct 1322; 22 L Ed 2d 600 (1969). The goal behind respondent's policy is to allocate its limited financial resources as fairly and efficiently as possible. We find nothing irrational from a policy whereby the needs of one individual are determined, in part, upon the income and financial resources available to that individual's spouse.

We also recognize that public policy favors the notion of support between spouses. This is reflected in Michigan's general poor law, MCL 401.1 *et seq.*; MSA 16.121 *et seq.*, wherein one spouse can be legally compelled to provide support to a poor spouse. MCL 401.3 and 401.5; MSA 16.123 and 16.125.

In light of the foregoing, we find that a policy of considering one spouse's receipt of ssi benefits in assessing the eligibility of the other spouse for general assistance benefits is rationally related to the legitimate goal of efficiently allocating appropriated state welfare funds. The enactment of such a policy constitutes a legitimate attempt on the

part of the state to limit its expenditures for public assistance.

Accordingly, we find no due process violation resulting from respondent's policy.

II

Next, petitioners argue that the challenged DSS policy is invalid because it violates the Supremacy Clause of the United States Constitution. US Const, art VI, § 2. Under the Supremacy Clause, state laws that conflict or interfere with an act of Congress are invalid. *Rose v Arkansas State Police,* 479 US 1, 3; 107 S Ct 334; 93 L Ed 2d 183 (1986).

In this case, petitioners argue that respondent's policy violates the "benefit level" provision of the Social Security Act. 42 USC 1382(b). This provision merely establishes the level of SSI benefits available to individuals. Specifically, petitioners argue that because the effect of respondent's policy is to force Mary Pyke to support her husband with SSI income, the policy contravenes the "benefit level" provision of the Social Security Act because it requires her to utilize, on her husband's behalf, benefits otherwise intended solely for her. We disagree.

Petitioners cite two cases in support of their argument. Each of these cases is distinguishable. In *Rose,* an Arkansas law requiring that any payments under federal law be offset from state worker's compensation payments was found to be invalid on Supremacy Clause grounds when applied to a federal statute providing for benefits to the survivors of state law enforcement officers who die from job-related injuries. The federal statute at issue expressly provided that payment "shall be in addition to any other benefit that may be due from

any other source." *Rose,* p 2. In *Raskin v Moran,*
684 F2d 472, 475 (CA 7, 1982), a Wisconsin law
reducing a reserve judge's salary by the amount of
federal social security benefits was found invalid
in light of the Social Security Act's express provi-
sion that, after age seventy, earnings may not be
offset from a recipient's ssi benefits. *Raskin,* p 478.

Each of the above cases involved attempts by the
state to directly offset payments actually being
received by the amount of federal payments. In
each instance, there existed express statutory lan-
guage manifesting Congress' intent that the fed-
eral payments not affect other payments received
by the recipients. Therefore, the state laws in
those cases directly interfered with the expressed
intent of Congress. This is not the situation in this
case.

Here, respondent's policy does not involve an
attempt to offset against ssi benefits any payments
being received by either of the petitioners. Rather,
the ssi benefits are merely taken into considera-
tion when determining an applicant's income level
in order to determine eligibility for general assis-
tance. Respondent's policy has no effect on the
amount of ssi benefits Mary Pyke receives. More-
over, petitioners have not provided us with any
provision of federal law evidencing Congress' in-
tent that receipt of ssi benefits may not be consid-
ered in determining independent eligibility for
state welfare assistance. Accordingly, we are un-
able to find that respondent's policy is invalid on
Supremacy Clause grounds.

We also reject petitioners' argument that re-
spondent's policy is invalid under the Social Secu-
rity Act's antialienation provision stating that
"none of the moneys paid or payable . . . under
[the Social Security Act] shall be subject to execu-
tion, levy, attachment, garnishment, or other legal

process." 42 USC 407(a). Each of the cases cited by petitioners involves direct attempts by the state to attach, by formal legal process, SSI benefits. This is not the case here. As previously noted, respondent's policy does not deprive Mary Pyke of her SSI benefits. Moreover, we are unable to conclude that the mere consideration of SSI benefits for purposes of determining general assistance eligibility constitutes a form of legal process as that term was intended by Congress.

III

Petitioners' third argument is that respondent's policy is also invalid because it unconstitutionally deprives Mary Pyke of her property without due process of law. US Const, Am XIV. We find this argument to be without merit. The cases relied upon by petitioners, *Goldberg v Kelly,* 397 US 254; 90 S Ct 1011; 25 L Ed 2d 287 (1970), and *Mathews v Eldridge,* 424 US 319; 96 S Ct 893; 47 L Ed 2d 18 (1976), both involved attempts to terminate welfare benefits the recipients had been previously receiving. As noted earlier, respondent's policy does not affect Mary Pyke's receipt of or entitlement to SSI benefits, nor does it create any legal obligations compelling her to utilize the benefits for any particular purposes. Such benefits cannot be considered "taken" merely because an applicant is found ineligible for state welfare assistance pursuant to an otherwise permissible policy.

IV

Petitioners final claim is that the subject policy is invalid because it was not promulgated pursuant to the required rule-making procedures set forth in the Administrative Procedures Act. MCL 24.201 *et seq.;* MSA 3.560(101) *et seq.*

The DSS is an agency subject to the rule-promulgation requirements of the APA. *Coalition for Human Rights v Dep't of Social Services,* 431 Mich 172, 183; 428 NW2d 335 (1988). When promulgating rules, an agency must follow specified statutory procedures that include various notice and public hearing requirements. See MCL 24.231-24.264; MSA 3.560(131)-3.560(164). Failure to substantially comply with the procedural requirements renders the rule invalid. MCL 24.243; MSA 3.560(143); *Jordan v Dep't of Corrections,* 165 Mich App 20, 24; 418 NW2d 914 (1987).

> "Rule" means an agency regulation, statement, standard, policy, ruling, or instruction of general applicability that implements or applies law enforced or administered by the agency, or that prescribes the organization, procedure, or practice of the agency, including the amendment, suspension, or recision thereof, *but does not include the following:*
>
> * * *
>
> (j) A decision by an agency to exercise or not to exercise a permissive statutory power, although private rights or interests are affected. [MCL 24.207; MSA 3.560(107). Emphasis added.]

It is undisputed that the contested agency policy in this case was not promulgated pursuant to the APA statutory procedures. Nevertheless, respondent argues that the subject policy was established pursuant to its "permissive statutory powers" and, therefore, is not subject to the rule-making requirements of the APA. In this regard, respondent relies on MCL 400.24; MSA 16.424, which provides, in relevant part:

> *The state department shall establish eligibility and financial standards for all forms of general*

*public relief and burial.* Differential area standards may be established to correspond to the characteristics of the community. Recommended standards for general relief and burial shall annually be submitted to the department by the Michigan county social services association. A county social services board which is dissatisfied with general relief and burial standards established for its county shall, within 30 days after notification of those standards, be given the opportunity to meet with the state director to review the determination. [Emphasis added.]

The situations in which courts have recognized decisions of the DSS as being within the § 7(j) exception are those in which explicit or implicit authorization for the actions in question has been found. *Coalition for Human Rights, supra,* pp 187-188. If an agency policy follows from its statutory authority, the policy is an exercise of permissive statutory power and not a rule requiring formal adoption. *Village of Wolverine Lake v State Boundary Comm,* 79 Mich App 56, 59; 261 NW2d 206 (1977), lv den 402 Mich 863 (1978). The issue in this case then is whether MCL 400.24; MSA 16.424 provides explicit or implicit authorization for the establishment of a policy in which the DSS may consider one spouse's receipt of SSI benefits when assessing the eligibility of the other spouse for general assistance benefits. We believe the statute authorizes the establishment of such a policy.

The "permissive statutory power" exception was discussed by this Court in *Hinderer v Dep't of Social Services,* 95 Mich App 716; 291 NW2d 672 (1980), lv den 409 Mich 930 (1980). There, the petitioner challenged the establishment by the DSS of a lag budgeting system (LBS) which was used in adjusting monthly Aid to Families with Dependent

Children benefit payments and which had the direct effect of determining the exact amount of aid a recipient received. *Hinderer,* p 726. This Court found that the imposition of a LBS was an exercise of a permissive statutory power pursuant to MCL 400.14(1)(b); MSA 16.414(1)(b), which authorized the distribution of federal and state aid in accordance with rules promulgated by the director, so long as they comported with federal statutes and regulations. Accordingly, the Court ruled the LBS was excepted from the rule-making requirements of the APA.

We believe the challenged eligibility policy in this case is similarly excepted from the rule-making requirements of the APA. Here, the contested policy constitutes an established standard affecting the eligibility of applicants for general assistance benefits. MCL 400.24; MSA 16.424 contains direct, explicit legislative authorization for the state department to establish eligibility and financial standards for all forms of general public relief. Just as the imposition of a lag budgeting system in *Hinderer, supra,* was found to follow from the director's statutory authority to establish rules concerning the general distribution of aid, we believe that the imposition of the department's policy concerning the eligibility of applicants similarly follows from the Legislature's explicit grant of statutory power to establish such standards.

We disagree with petitioners' contention that *Coalition for Human Rights, supra,* compels us to find the instant policy subject to the rule-making requirements of the APA. In that case, the petitioner challenged a telephone hearing policy of the DSS. Our Supreme Court noted that the only relevant statutory provision relating to the conduct of hearings was MCL 400.9(1); MSA 16.409(1). That statute, unlike the statutory provision in this case,

expressly requires that rules for the conduct of
hearings be promulgated pursuant to the require-
ments of the APA. There is no similar requirement
with respect to the establishment of eligibility and
financial standards. Indeed, we believe the absence
of a similar requirement in MCL 400.24; MSA
16.424 supports the position that the Legislature
did not intend that eligibility and financial stan-
dards be required to be promulgated pursuant to
the formal rule-making procedures of the APA.

We also disagree with petitioners' contention
that § 24 provides no checks on respondent's power
and that allowing respondent to establish eligibil-
ity policies pursuant to this statute will render the
APA a nullity. Even though not promulgated pur-
suant to formal rule-making procedures, an agency
policy is still required to be within the matter
covered by the enabling statute, comply with the
underlying legislative intent, and not be arbitrary
or capricious. See *Binsfeld v Dep't of Natural
Resources,* 173 Mich App 779, 786; 434 NW2d 245
(1988). Although not challenged by petitioners on
this basis, we believe that each of these require-
ments have been satisfied.

Accordingly, because we find that establishment
of the DSS' policy of considering one spouse's re-
ceipt of SSI benefits for purposes of assessing the
other spouse's eligibility for general assistance
benefits to be an exercise of the department's
permissive statutory power, it is not a rule requir-
ing formal adoption pursuant to the requirements
of the APA.

We also reject petitioners' final argument that
respondent's policy is invalid because it contra-
venes 1979 AC, R 400.12(10), limiting DSS consider-
ation to income and resources available in fact for
current use. The SSI benefits are readily available
to petitioners for the purchase of food, clothing,

and shelter and do not artificially depreciate a recipient's need. *McKee v Dep't of Social Services,* 424 Mich 404, 412; 381 NW2d 679 (1985).

Affirmed.

SULLIVAN, J., concurred.

SHEPHERD, P.J. *(dissenting).* I do not believe that we should reach the issues decided by the Court in §§ I, II and III of the opinion since I believe that the subject policy is invalid because it was not promulgated pursuant to the required rule-making procedures set forth in the Administrative Procedures Act. Since the rule in question was not properly promulgated, I would remand to the circuit court for that court to order the Department of Social Services to determine eligibility without reference to the spouse's Supplemental Security Income benefits.

As indicated in the majority opinion, the statute in question provides: "The state department *shall* establish eligibility and financial standards for all forms of general public relief and burial." MCL 400.24; MSA 16.424. (Emphasis added.)

In my view this does not give the agency the luxury of deciding to exercise or not to exercise a permissive statutory power, a prerequisite to being exempt from the rule-making requirements of the Administrative Procedures Act. To me the APA and the statute under which DSS operates are clear and unambiguous. If an agency is free to exercise or not to exercise a power, the agency need not promulgate a rule. Where the agency is required to establish standards or rights, it must promulgate a rule.

In the instant case the so-called administrative policy goes to the heart of the eligibility of recipients for benefits. The purpose behind the rule-

making requirement is to give those who are
directly affected by a substantial and substantive
agency action the opportunity to be heard by the
agency before it promulgates standards or rights
or policies that have substantial impact upon the
rights of those served by the agency. In this case
individuals will be entirely cut off from benefits by
the implementation of the policy in question and I
believe that the whole purpose of the rule-making
requirement is to afford those affected by the
agency the protection against arbitrary and unrea-
sonable action, and this cannot be accomplished
without first giving the interested parties or
groups the right to be heard.

In *Coalition for Human Rights v Dep't of Social
Services,* 431 Mich 172; 428 NW2d 335 (1988), the
Supreme Court held that a system of holding
telephone conferences in lieu of hearings was of
such significance that the procedure could not be
instituted without rule-making. The Court indi-
cated that there is a general principle that "the
preferred method of policymaking is by promulga-
tion of rules." *Coalition for Human Rights, supra*
at 185. When we start with that assumption and
compare telephone conferences, a mere procedural
device, with the policy in question in the instant
case (a policy that will totally eliminate benefits to
a whole class of people) it becomes abundantly
clear that the policy of eliminating general assis-
tance benefits of one spouse because of the SSI
benefits received by the other is a matter that
requires the more formalized protections of the
rule-making requirements.

The majority opinion relies, in part, on *Village
of Wolverine Lake v State Boundary Comm,* 79
Mich App 56; 261 NW2d 206 (1977), and *Hinderer
v Dep't of Social Services,* 95 Mich App 716; 291

NW2d 672 (1980), lv den 409 Mich 930 (1980). I believe that such reliance is misplaced.

In *Wolverine Lake* the Court of Appeals interpreted a statute to mean that the agency in question had been delegated the power by the Legislature to disfavor the creation of small communities within larger metropolitan areas. The *Wolverine Lake* Court indicated, "[t]his bias against small communities rises as much from the statute as it does from the Boundary Commission 'policy,' but this legislative choice is a political one and not subject to judicial review." *Wolverine Lake, supra* at 59-60. Thus the policy that was in question in *Wolverine Lake* was one that had been delegated by the Legislature to the agency. In the instant case there is nothing specific in the legislation under consideration from which it necessarily follows that there is authority to withhold all benefits from one individual based upon the SSI benefits received by that individual's spouse.

In *Hinderer* the Court was concerned with nothing more than a method of accounting that would deduct benefits from a recipient in one month and add payments back in another month while leaving the total eligibility rights intact. In the long run the beneficiaries of the agency's services received essentially the same benefits and were deprived of nothing. In the instant case a potential recipient of benefits is deprived of everything based upon an internal policy of the agency without benefit of the protection afforded by the rule-making requirements of the APA.

Once the agency complies with the rule-making procedures and all concerned parties have an opportunity to make their views known, the agency might very well modify or eliminate the proposed policy. If it persists in maintaining the policy, reasons will have been given and there will be

justifications in the record for the judicial branch to evaluate. That was the reason for instituting the rule-making requirement of the APA. Since we do not have the results of the procedures of the APA in this case, I would not want to address the constitutional issues and would therefore require the circuit court to order that general assistance benefits should be determined without regard to a spouse's SSI benefits.

Accordingly, I would reverse and remand to the circuit court.