AMERICAN FEDERATION OF STATE, COUNTY AND
MUNICIPAL EMPLOYEES, AFL-CIO v DEPARTMENT OF
MENTAL HEALTH

Docket No. 140834. Submitted October 12, 1993, at Detroit. Decided
August 1, 1994, at 9:30 A.M. Leave to appeal sought.

The American Federation of State, County and Municipal Employees, AFL-CIO, Lola DeBois, and Shirley Towns brought an
action in the Ingham Circuit Court against the Department of
Mental Health and the Civil Service Commission. The action
against the Department of Mental Health sought declaratory
and injunctive relief with respect to the implementation of an
August 13, 1990, department guideline that included a standard-form contract that would have instituted in all future
contracts different obligations than those then existing between
the department and the private organizations that contracted
to provide group-home mental health services for the department. The plaintiffs asserted that the guideline adopted by the
department was a rule within the meaning of the Administrative Procedures Act and, accordingly, that the standard-form
contract was unenforceable because the department had not
followed the formal rule-making procedures of the APA. The
trial court, James R. Giddings, J., granted summary disposition
for the department on the basis that the guideline was not a
rule within the meaning of the APA and that the department
did not have to comply with the formal rule-making procedures. The plaintiffs appealed.

The Court of Appeals *held:*

1. Although the trial court did not decide whether the
plaintiffs have standing to bring this action, that question was
raised below and is a question of law for which all the facts
necessary for its resolution have been presented. Accordingly,
that question properly is raised in this appeal.

2. Because plaintiff union, which represents employees of
various private group-home providers that would be affected by
the new standard-form contract, and the individual plaintiffs,
who work for a private group-home provider that contracts

REFERENCES

Am Jur 2d, Administrative Law §§ 154, 304; Parties § 33.
See ALR Index under Administrative Law; Parties.

with the department, have a substantial interest and personal stake in the outcome of this controversy because of the controversy's effect on the terms and working conditions of employees working for those providers, the plaintiffs have standing to bring this action.

3. Although the decision of the department to contract with private group-home providers is a permissive exercise of its statutory powers, the guideline, including the incorporated standard-form contract, is a rule within the meaning of the APA and should have been promulgated pursuant to the rule-making procedures of the APA. Because the department promulgated the guideline and the included standard-form contract without following the statutory procedures, they are without legal authority or effect. The trial court erred in granting summary disposition for the department and in refusing to grant summary disposition for the plaintiffs.

Reversed and remanded.

CONNOR, J., dissenting, stated that the decision of the trial court should be affirmed, because the guideline at issue clearly is a guideline, which is binding only on the agency, and not a rule, which is binding on outside parties and purports to have the force and effect of law, and, accordingly, is not subject to the rule-making procedures of the APA.

1. COURTS — STANDING — MENTAL HEALTH PROVIDERS — CONTRACTS.

A union representing employees of private group-home providers of services for the Department of Mental Health and the employees of those providers have standing to bring an action against the Department of Mental Health challenging a guideline adopted by the department that incorporates the standard-form contract used by the department to contract for group-home services.

2. ADMINISTRATIVE LAW — DEPARTMENT OF MENTAL HEALTH — MENTAL HEALTH PROVIDERS — CONTRACTS — ADMINISTRATIVE PROCEDURES ACT.

A guideline adopted by the Department of Mental Health that prescribes the provisions of the mandatory standard-form contract used by the department to contract for mental health services with private group-home providers is a rule within the meaning of the Administrative Procedures Act and is subject to the formal rule-making procedures of the APA (MCL 24.207; MSA 3.560[107]).

*Webb, Hildebrandt & Paton, P.C.* (by *L. Roger Webb* and *Alison L. Paton*), for the plaintiffs.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Gary P. Gordon* and *Richard P. Gartner,* Assistant Attorneys General, for the Department of Mental Health.

Before: JANSEN, P.J., and CONNOR and R. L. ZIOLKOWSKI,* JJ.

JANSEN, P.J. Plaintiffs appeal as of right from an order of the Ingham Circuit Court granting defendant Department of Mental Health partial summary disposition pursuant to MCR 2.116(C)(10) and 2.116(I)(2). We reverse.

The State of Michigan is responsible for providing mental health services. Const 1963, art 8, § 8. The Mental Health Code, MCL 330.1001 *et seq.*; MSA 14.800(1) *et seq.*, delineates the powers and duties of the Department of Mental Health (DMH) and requires the DMH to ensure that adequate and appropriate mental health services are available to all citizens in this state. The DMH is permitted to operate such facilities directly or may contract with a nonpublic entity to fulfill those duties or powers granted by statute to the DMH. MCL 330.1116(j); MSA 14.800(116)(j).

Pursuant to this statutory authority, the DMH has utilized a standard contract (the DMH-3800B contract) to contract with private group residential home providers in which developmentally disabled persons are placed. On August 13, 1990, the DMH issued a proposed guideline revision that would establish a new contract for the private group-home providers. The guideline included a new standard DMH-3800B contract, which is incorporated by reference as part of the guideline. The proposed contract contained a number of signifi-

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

cant changes. It is undisputed that private group-
home providers must enter into the contract in
order to do business with the DMH. Neither the
private provider nor the DMH staff have the power
to modify any terms of the new DMH-3800B con-
tract.

Plaintiffs Lola DeBois and Shirley Towns are
employed by Michigan Community Service, Inc., a
nonprofit corporation that provides specialized res-
idential services for developmentally disabled
adults. Plaintiff American Federation of State,
County and Municipal Employees, AFL-CIO,
(AFSCME) is a voluntary, unincorporated association
that represents public employees. The AFSCME has
been seeking to represent direct-care workers, such
as DeBois and Towns, and has received from the
Michigan Employment Relations Commission, the
Employment Relations Board, and this Court fa-
vorable rulings finding the DMH to be a joint
employer. *Michigan Council 25, AFSCME v Louisi-
ana Homes, Inc,* 192 Mich App 187; 480 NW2d 280
(1991), vacated 441 Mich 883 (1992), aff'd on re-
mand *Michigan Council 25, AFSCME v Louisiana
Homes, Inc (On Remand),* 203 Mich App 213; 511
NW2d 696 (1993). Correspondence issued by the
director of the DMH states that the DMH's motive in
attempting to change the provisions of the stan-
dard contract is to avoid the effect of the *Louisiana
Homes* rulings.

Plaintiffs filed a two-count complaint on October
29, 1990. Count I concerned defendant Civil Ser-
vice Commission and is not relevant to the instant
appeal. Count II sought declaratory and injunctive
relief against the DMH, requesting the trial court
to enjoin the DMH from instituting revisions of
departmental guidelines regarding standard con-
tracts between the DMH and private organizations
providing residential mental health services.

Plaintiffs contend that the contract was actually an administrative rule and that the DMH was required to follow the formal rule-making procedures of the Administrative Procedures Act, MCL 24.201 *et seq.*; MSA 3.560(101) *et seq.*

On November 29, 1990, plaintiffs requested a preliminary injunction, which was granted by the trial court. The trial court subsequently denied the DMH's motion to vacate the preliminary injunction. Plaintiffs then filed a motion for summary disposition regarding count II of the complaint. The trial court denied plaintiffs' motion for summary disposition, but granted summary disposition for the DMH pursuant to MCR 2.116(C)(10) and MCR 2.116(I)(2).

As a preliminary matter, we must first determine whether plaintiffs have standing to bring this action. Although the DMH raised this issue below, the trial court did not decide it. Both parties have briefed thoroughly this issue before this Court. We, therefore, will review this issue, because it involves a question of law for which the facts necessary for its resolution have been presented. *Gillette Co v Dep't of Treasury,* 198 Mich App 303, 311; 497 NW2d 595 (1993).

Contrary to the DMH's argument, standing and subject-matter jurisdiction are not the same. *Dep't of Social Services v Carter,* 201 Mich App 643, 646; 506 NW2d 603 (1993); *Altman v Nelson,* 197 Mich App 467, 472; 495 NW2d 826 (1992). It is clear that plaintiffs have standing in this case, because they have shown a substantial interest and a personal stake in the outcome of the controversy. *Altman,* p 475. The AFSCME has a substantial interest and personal stake in the outcome of this case, because the DMH's director, in letters, has stated that the changes in the contract are designed to avoid the ruling that the DMH is a joint employer and that

the AFSCME, therefore, may organize and represent the direct-care workers. Plaintiffs Lola DeBois and Shirley Towns, as direct-care workers for one of the private group-home providers, have a substantial interest and personal stake in the outcome of this case, because the changes in the contract directly affect the terms and conditions of their employment. Accordingly, plaintiffs have standing to bring this suit.

Next, we must determine if the guideline and standard contract constitute a rule within the meaning of the APA and, if so, whether the DMH's attempt to change the standard contract violates the promulgation procedures set forth in the APA. Because the trial court granted summary disposition to the DMH pursuant to MCR 2.116(C)(10), our review of this issue is de novo, because we must review the record to determine whether the DMH was entitled to judgment as a matter of law. *Michigan Mutual Ins Co v Dowell,* 204 Mich App 81, 86; 514 NW2d 185 (1994).

Section 7 of the APA defines rule as:

"Rule" means an agency regulation, statement, standard, policy, ruling, or instruction of general applicability that implements or applies law enforced or administered by the agency, or that prescribes the organization, procedure, or practice of the agency, including the amendment, suspension, or rescission thereof . . . . [MCL 24.207; MSA 3.560(107)].

The trial court found that the guideline and standard contract is not a rule on the basis of the provision excluding from the definition of a rule the following:

A decision by an agency to exercise or not to exercise a permissive statutory power, although

private rights or interests are affected. [MCL
24.207(j); MSA 3.560(107)(j)].

Our Supreme Court has noted that "rule" is de-
fined broadly to defeat agencies' inclinations to
label as bulletins, announcements, guides, and
interpretive bulletins those directives that are
actually rules. *Detroit Base Coalition for the Hu-
man Rights of the Handicapped v Dep't of Social
Services,* 431 Mich 172, 183; 428 NW2d 335 (1988).
Further, the situations in which § 7(j) exemptions
have been found to apply are those in which
explicit or implicit authorization for the action in
question have been found. *Detroit Base Coalition,*
pp 187-188.

The DMH claims that the above exemption ap-
plies pursuant to MCL 330.1116(j); MSA
14.800(116)(j), which states that the DMH "may
enter into any agreement, contract, or arrange-
ment with any public or nonpublic entity that is
necessary or appropriate to fulfill those duties or
exercise those powers that have by statute been
given to the department." This provision allows
the DMH to contract with private group-home pro-
viders; however, the issue here is whether the
contract itself, which must be utilized by the pri-
vate group-home providers and may not be modi-
fied, constitutes a rule within the meaning of the
APA. Thus, while the act of contracting with a
private group-home provider is permissive, the
terms of the contract and the requirement that
the private group-home provider abide by the con-
tract are not. *Spear v Michigan Rehabilitative
Services,* 202 Mich App 1, 4-5; 507 NW2d 761
(1993).

The standard contract is very specific. It is sev-
enteen pages long and provides, inter alia, for
funding of the group homes, discrimination poli-

cies; compliance with DMH rules, guidelines, and directives; submission of financial statements; requirements regarding direct-care worker training and staff levels; requirements regarding patient rights and reporting requirements, and personnel policies and procedures including bonuses and evaluations. The guideline, which incorporates the standard contract by reference, is specifically intended to rescind and replace the former standard contract. Therefore, the guideline and standard contract, which must be read together, are not merely an explanatory guideline that would not be subject to the promulgation procedures of the APA. *Jordan v Dep't of Corrections,* 165 Mich App 20, 25; 418 NW2d 914 (1987).

Accordingly, while the DMH's decision to contract with private group-home providers is a permissive exercise of its statutory power, the guideline and the standard contract, which is required to be entered into by a private group-home provider and may not be modified, are not exempt from the definition of a rule and must be promulgated as a rule pursuant to the APA. *Spear, supra,* p 5; *Palozolo v Dep't of Social Services,* 189 Mich App 530; 473 NW2d 765 (1991) (adopting Judge SHEPHERD's dissenting opinion in *Pyke v Dep't of Social Services,* 182 Mich App 619, 633-636; 453 NW2d 274 (1990). Because the DMH failed to promulgate the guideline and standard contract pursuant to the APA, its attempt to revise the standard contract is without legal authority or effect.

We reverse the trial court's grant of summary disposition in favor of the DMH and remand for the court to enter summary disposition in favor of plaintiffs. We do not retain jurisdiction.

R. L. ZIOLKOWSKI, J., concurred.

CONNOR, J. *(dissenting).* I dissent. I would hold

that the Department of Mental Health (DMH) did not violate the Administrative Procedures Act, MCL 24.201 *et seq.*; MSA 3.560(101) *et seq.*, by revising the standard contract provisions at issue without treating the revision as the making of a rule within the meaning of the APA.

Generally, a "rule" is an agency policy of general applicability that prescribes the practice of the agency. MCL 24.207; MSA 3.560(107). However, the APA definition of rule specifically excludes "guidelines" that are promulgated by the agency. See MCL 24.207(h); MSA 3.560(107)(h). "Guidelines" are declarations of agency policy binding on the agency issuing them, but not on any other person, which do not have the force or effect of law. MCL 24.103(6); MSA 3.560(103)(6). Guidelines necessarily prescribe some agency practice.

I am satisfied that the guideline that accompanied the adoption of new standard contract language is actually a guideline and not a rule. It is binding only on the DMH and on no other person. Moreover, it does not purport to have the force or effect of law: it expressly allows for the director of the DMH to authorize departures from the standard contract language.

I am also satisfied that adopting standard contract language is not rulemaking. Standard contract language is binding on no one, neither the DMH nor anyone else, until someone agrees to be bound by the language. Even taking a position that no deviation from the language will be permitted is simply hard bargaining: parties seeking to contract with the DMH are free to counteroffer with any language they wish. The DMH has the statutory power to contract as is appropriate. MCL 330.1116(j); MSA 14.800(116)(j). The DMH's decision to contract with private group providers is a per-

missive exercise of its statutory power, and the department has discretion to determine what is necessary or appropriate language in the contract to fulfill the duties imposed on it. If an agency's decision whether to exercise such statutory power is not rulemaking, MCL 24.207(j); MSA 3.560(107)(j), then I agree with the trial court that the agency's decision regarding the terms under which it will exercise that power is not rulemaking.

I would affirm.