COUNTY OF DELTA v DEPARTMENT OF NATURAL RESOURCES

Docket No. 58029. Submitted May 4, 1982, at Sault Ste. Marie.— Decided July 21, 1982. Leave denied, 414 Mich 954.

The County of Delta and municipalities and townships within its border brought an action in Delta Circuit Court, Clair J. Hoehn, J., seeking a declaratory judgment holding that the Department of Natural Resources could not enforce the provisions of the Solid Waste Management Act unless, in accordance with the mandate of the so-called Headlee Amendment to the State Constitution, state funding was provided to make up the increased costs created by the provisions of that act. Plaintiffs also sought an injunction prohibiting the defendant from enforcing the provisions of the Solid Waste Management Act absent the necessary state funding. The trial court entered a judgment declaring that the Solid Waste Management Act imposed new duties on the local units of government which resulted in new costs to those local units and, accordingly, the provisions of that act could not be enforced absent state funding in accordance with the Headlee Amendment. The court further enjoined defendant from enforcing the provisions of the Solid Waste Management Act until state funding was forthcoming, ordered that defendant issue to the County of Delta a permit to operate a landfill free of restrictions based upon the Solid Waste Management Act and ordered defendant to issue to the City of Gladstone and the City of Escanaba a landfill operating permit and a landfill construction permit, respectively. Defendant appeals. *Held:*

1. The Solid Waste Management Act creates a statutory

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 457, 461.

57 Am Jur 2d, Municipal, School, and State Tort Liability §§ 127, 128.

[3] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 195, 461.

[4] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions § 461.

[5] 2 Am Jur 2d, Administrative Law §§ 188, 189.

[6] 22 Am Jur 2d, Declaratory Judgments § 10 *et seq.*

mandate requiring local units of government to dispose of solid waste products.

2. The now-repealed garbage and refuse disposal act, while making a proper delegation of legislative authority to the director of the Department of Natural Resources, did not impose any mandatory specific duties upon local units of government to dispose of solid wastes. The rules promulgated pursuant to that act did not create such a duty and the unpromulgated guidelines were ineffective to create such a duty prior to the ratification of the Headlee Amendment.

3. Since the Solid Waste Management Act imposes new duties upon the local units of government which result in increased costs to such units of government, the provisions of that act violate the mandate of the Headlee Amendment to the constitution in the absence of state funding for those costs.

Affirmed.

1. ENVIRONMENT — SOLID WASTE — SOLID WASTE MANAGEMENT ACT.

The requirement in the Solid Waste Management Act that a county or municipality "shall assure" the removal from the site of generation all solid waste, when read in the context of the entire act, is a statutory mandate requiring such units of government to dispose of solid waste products (MCL 299.424; MSA 13.29[24]).

2. ENVIRONMENT — CONSTITUTIONAL LAW — NATURAL RESOURCES — SOLID WASTE.

The provision in the Michigan Constitution making the conservation of natural resources of this state a matter of paramount concern is not self-executing and places no duty on counties and municipalities to dispose of solid waste (Const 1963, art 4, § 52).

3. ENVIRONMENT — GARBAGE AND REFUSE DISPOSAL ACT — SOLID WASTE — LANDFILLS.

The provision in the now-repealed garbage and refuse disposal act permitting the promulgation of "sanitary standards" for refuse disposal and the rule promulgated pursuant to that act requiring that landfill operations be conducted so as to avoid "unlawful pollution", while sufficiently precise to be a proper delegation of legislative authority, did not impose any mandatory specific duty on municipalities to dispose of solid waste (MCL 325.291 *et seq.;* MSA 14.435[1] *et seq.).*

4. ENVIRONMENT — CONSTITUTIONAL LAW — SOLID WASTE MANAGEMENT ACT — HEADLEE AMENDMENT.

The requirement of the Solid Waste Management Act mandating

that counties and municipalities dispose of solid waste creates a new and increased level of activity resulting in increased costs to local governmental units within the meaning of the so-called Headlee Amendment to the Michigan Constitution (Const 1963, art 9, §§ 25, 29).

5. ENVIRONMENT — LANDFILLS — LICENSES — DEPARTMENT OF NATURAL RESOURCES — ADMINISTRATIVE PROCEDURES ACT.

The Department of Natural Resources may not issue a permit to construct a landfill containing stipulations based upon departmental guidelines and internal policies not promulgated in accordance with the Administrative Procedures Act; the rule making procedures of the Administrative Procedures Act may not be circumvented by the use of unpromulgated guidelines and policies (MCL 24.207, 24.226; MSA 3.560[107], 3.560[126]).

6. COURTS — CIRCUIT COURTS — DECLARATORY JUDGMENTS — "ACTUAL CONTROVERSIES" — COURT RULES.

Circuit courts are vested with the power to declare the legal rights of parties in cases of "actual controversy"; and an "actual controversy" exists where a declaratory judgment is necessary to guide a litigant's future conduct in order to preserve his legal rights (GCR 1963, 521.1).

*Butch, Quinn, Rosemurgy, Jardis & Valkanoff, P.C.* (by *Thomas L. Butch* and *Terry F. Burkhart),* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Frank J. Pipp* and *Terrence P. Grady,* Assistants Attorney General, for defendant.

Before: R. B. BURNS, P.J., and J. H. GILLIS and V. J. BRENNAN, JJ.

R. B. BURNS, P.J. Defendant appeals from a judgment which enjoined the implementation of the Solid Waste Management Act, MCL 299.401 *et seq.;* MSA 13.29(1) *et seq.,* against plaintiffs until the state Legislature, as required by the Headlee Amendment, Const 1963, art 9, §§ 25 and 29, ap-

propriated funds to pay for the increased activities necessary to comply with the statute. The Headlee Amendment, in essence, provides that the state may not pass laws which require local governments to incur any additional financial burdens beyond those imposed by existing law. Pursuant to the Headlee Amendment, the state is required to provide funds for any new or increased activities or services the localities by law must offer.

This case presents a matter of first impression, namely, how the Solid Waste Management Act and the Headlee Amendment interact.

The Solid Waste Management Act was adopted after the electorate passed the Headlee Amendment. The act, in part, provides:

"A municipality or county *shall assure* that all solid waste is removed from the site of generation, frequently enough to protect the public health, and are delivered to licensed solid waste disposal areas, * * *." MCL 299.424; MSA 13.29(24). (Emphasis added.)

The sections of the Headlee Amendment pertinent to this appeal provide in part:

"The state is prohibited from requiring any new or expanded activities by local governments without full state financing, from reducing the proportion of state spending in the form of aid to local governments, or from shifting the tax burden to local government." Const 1963, art 9, § 25.

"The state is hereby prohibited from reducing the state financed proportion of the necessary costs of any existing activity or service required of units of Local Government by state law. A new activity or service or an increase in the level of any activity or service beyond that required by existing law shall not be required by the legislature or any state agency of units of Local Government, unless a state appropriation is made and disbursed to pay the unit of Local Govern-

ment for any necessary increased costs." Const 1963, art 9, § 29.

Our analysis begins with determining whether the Solid Waste Management Act requires "new or increased" activities or services which are within the ambit of the Headlee Amendment. The defendant argues that the term "shall assure", as used in the statute, does not constitute a mandate that the municipality is required to follow. Therefore, a new duty to dispose of solid waste materials is not placed on the municipalities. Although the plaintiffs concede that the act grants them the option of engaging in contracts with private enterprises to dispose of the solid waste, they maintain that the duties of assuring solid waste disposal are nonetheless mandatory and impose the ultimate legal responsibility for waste disposal on the localities.

The general rule when interpreting the language of a statute is to construe it according to its plain meaning. Uniformly, this Court has held that the word "shall" is mandatory. See *State Highway Comm v Vanderkloot,* 392 Mich 159; 220 NW2d 416 (1974). Moreover, a statute must be read in its entirety. The meaning given one section must be arrived at after due consideration of other sections so as to produce, if possible, a harmonious and consistent enactment as a whole. *King v Director, Midland County Dep't of Social Services,* 73 Mich App 253; 251 NW2d 270 (1977). Upon review of the entire act, we are convinced that the words "shall assure" are the equivalent to a command to localities to dispose of solid waste products. The overall purpose of the act is to require localities to develop a solid waste management plan. See MCL 299.425-299.430; MSA 13.29(25)-13.29(30).

The next inquiry becomes: Did units of local government have mandatory duties with respect to

solid waste management prior to the adoption of the Solid Waste Management Act?

We summarily reject defendant's argument that plaintiffs had a pre-existing constitutional duty to dispose of solid waste. Const 1963, art 4, § 52 provides that conservation of the natural resources of the state is of paramount concern. However, a constitutional provision is not self-executing. The public policy of a state becomes conclusive when the Legislature enacts a law within the limits of the constitution. *Lieberthal v Glens Falls Indemnity Co of Glens Falls, New York,* 316 Mich 37; 24 NW2d 547 (1946).

The Solid Waste Management Act repealed the garbage and refuse disposal act,[1] MCL 325.291 *et seq.;* MSA 14.435(1) *et seq.* The prior act did provide for the licensing and regulation of garbage and refuse disposal facilities. However, as defendant conceded,[2] the prior act imposed no mandatory duties upon the local units of government with respect to solid waste management.

Under MCL 325.296; MSA 14.435(6) of the prior act the commissioner was authorized to promulgate rules containing "sanitary standards" for refuse disposal. 1980 AC, R 325.2721(4), promulgated pursuant to the authority accorded by that section, required that landfill operations be conducted so

[1] The defendant argued that local governments had pre-existing mandatory duties with respect to solid waste management by virtue of the water resources act, MCL 323.1 *et seq.;* MSA 3.521 *et seq.,* the Resource Recovery Act, MCL 299.301 *et seq.;* MSA 13.27(1) *et seq.,* the Environmental Protection Act, MCL 691.1201 *et seq.;* MSA 14.528(201) *et seq.,* and the Michigan Public Health Code, MCL 333.1101 *et seq.;* MSA 14.15(1101) *et seq.* None of the statutes relied upon establish the specifications contained in the new act. They did not require systematic solid waste collection, plastic liners on disposal areas, monitoring wells, cover requirements, or leachate collection systems.

[2] In the answer to plaintiffs' second amended complaint, defendant conceded this point.

that conditions of "unlawful pollution" not be created. Plaintiffs argue that the sanitary standards in the statute which permitted rule making provided inadequate guidance and therefore constituted an invalid delegation of legislative authority. Also, they challenge the validity of the standard contained in the rule on the same ground.

Generally, the courts have adopted a lenient and expansive test to measure the constitutionality of the standards which delegate legislative authority. *Dep't of Natural Resources v Seaman,* 396 Mich 299; 240 NW2d 206 (1976), *State Highway Comm v Vanderkloot, supra.* The test was set forth in *Westervelt v Natural Resources Comm,* 402 Mich 412, 444-445; 263 NW2d 564 (1978):

> "As we ruled *supra,* a delegation of legislative power to an administrative agency is constitutionally valid when:
>
> "(1) for purposes of satisfying the constitutional principle of the 'separation of powers', the legislation in which power is delegated to an administrative agency expressly or by reference includes 'standards * * * as reasonably precise as the subject matter' of the legislation 'requires or permits'; and
>
> "(2) for purposes of satisfying the Due Process Clause of our Constitution, safeguards, including 'standards,' exist, thereby assuring that the public will be protected against potential abuse of discretion at the hands of administrative officials; and, if the 'standards' afforded provide little or no actual due process protection a court should, in balance, determine whether a sufficient totality of safeguards exists."

In the past the Supreme Court scrutinized the use of "necessity" as the standard and held that the use of that standard in a statute was constitutionally sufficient. *State Highway Comm v Vanderkloot, supra.*

The guidelines "sanitary standards" and "unlawful pollution" contained in the garbage and refuse statute and rule, respectively, are more precise than the standard "necessity" which has passed constitutional muster. *State Highway Comm v Vanderkloot, supra.*

Here, the standards set forth in the garbage and refuse act and the standards in the rules promulgated pursuant to its statutory authority were as reasonably precise as the subject regulated permitted. As the Court noted in *Dep't of Natural Resources v Seaman, supra,* natural resources management is ill-suited for specific regulation.

Nonetheless, the defendant's claim that the rule imposed a pre-existing mandatory duty on municipalities to dispose of solid waste must be rejected. The repealed act, MCL 325.296; MSA 14.435(6), specifically required that all rules promulgated under the statute be adopted pursuant to the Michigan Administrative Procedures Act (APA), MCL 24.201 *et seq.;* MSA 3.560(101) *et seq.* Therefore, due process requirements must be satisfied. See *Westervelt v Natural Resources Comm, supra.* The standards under the rule did not establish any specific duties. The only sweeping requirement of the rule was to avoid "unlawful pollution". This standard merely echoes the standards in the statute to promulgate "sanitary standards". In contrast, the Solid Waste Management Act imposed the duties, and expenditures, now complained of, namely, the requirement of 30-mil PVC liners or 2-foot clay backups on disposal sites and a mandatory duty to dispose of waste. There was no indication that these specific requirements were imposed by 1980 AC, R 325.2721(4).

Therefore, 1980 AC, R 325.2721(4) cannot be viewed as imposing a valid pre-existing duty on

municipalities equivalent to the regulations now sought to be enforced. The reliance on the rule to avoid the purview of the Headlee Amendment is misplaced. The duties under the Solid Waste Management Act clearly are "new or increased".

Given that the Solid Waste Management Act does impose new and increased duties on municipalities, the next inquiry is whether the other stipulations of the Headlee Amendment are satisfied. Do the newly required services or activities occasion "necessary increased costs" within the meaning of the Headlee Amendment?

A review of the record convinces us that the new statute will cause localities to incur substantial costs. The 30-mil PVC liner required will cost approximately $72,000. The addition of a two-foot clay backup would cost between $86,000 and $173,-000. Compliance with the new plan will increase operation costs by $225,000 over the maintenance of the existing landfill plan.

The Headlee Amendment uses the term "necessary costs". *Michigan v Allen Park,* 501 F Supp 1007 (ED Mich, 1980), held that, since the court order bond act, MCL 123.247; MSA 5.2667, which permits the Department of Natural Resources to finance construction of public works, pre-existed the Headlee Amendment, the amendment did not apply to taxes imposed for the payment of principal and interest on bonds.

The court order bond act does permit municipalities to issue bonds to construct solid waste disposals. However, we find the costs of the solid waste disposal plan still "necessary" as the term is used in the Headlee Amendment. In *Allen Park, supra,* 1020, the judge concluded:

"In its answer in this lawsuit, Allen Park raised as a

defense its inability to finance its local share because of the law and Constitution of the State of Michigan, specifically the recently-ratified Headlee Amendment to Article IX of the Michigan Constitution and legislation implementing the Headlee Amendment. However, Allen Park submitted no brief on the subject nor did it offer any testimony to rebut that presented by plaintiffs' witness, Charles Moon, a prominent bond attorney and amicus curiae in this suit. I am persuaded by his testimony that funding for this project is not precluded by the law and Constitution of the State of Michigan."

Here, conclusive testimony was presented that a bond offering was not a viable alternative to financing the new solid waste disposal plan.

The defendant argues that the court below erred in finding the APA was violated when defendant conditioned the issuance of a license to operate a solid waste disposal area on guidelines, drawings and policies, and engineering expertise. The plaintiffs were informed that their proposed landfill would need a 2-foot clay backup in addition to a 30-mil PVC plastic liner. The license issued to plaintiff county to operate a landfill was subject to 31 stipulations.

Under the APA, an agency may not adopt a guideline in lieu of a rule. MCL 24.226; MSA 3.560(126). Pursuant to the APA, MCL 24.207; MSA 3.560(107), a rule which must be formally adopted is defined as:

" 'Rule' means an agency regulation, statement, standard, policy, ruling or instruction of general applicability, which implements or applies law enforced or administered by the agency, * * * but does not include the following:

* * *

"(g) an intergovernmental, interagency or intra-agency memorandum, directive or communication

*which does not affect the rights of, or procedures and practices available to the public.*

"(h) a form with instructions, an interpretive statement, a guideline, and informational pamphlet or other material which in and of itself does not have the force of law but is merely explanatory." (Emphasis added.)

Here, the license was conditioned on compliance with 31 stipulations which were departmental guidelines and internal policies. Clearly, then, these guidelines were binding. Therefore, they effectively were rules under the guise of guidelines and policies. They did not fall within the exceptions to the rule. The "stipulations" did affect the rights and practices available to the public. The rights of the public may not be determined, nor licenses denied, on the basis of unpromulgated policies. *Mallchok v Liquor Control Comm,* 72 Mich App 341; 249 NW2d 415 (1976). Agency correspondences and bound manuals which set forth guidelines for public construction projects are not rules within the definition of the APA. See *Greenfield Construction Co v Highway Dep't,* 402 Mich 172; 261 NW2d 718 (1978), *In the Matter of Richard P,* 403 Mich 173; 267 NW2d 911 (1978). The rulemaking procedures of the APA may not be circumvented.

Defendant further argues that the trial court improperly exercised its equitable jurisdiction by considering issues and theories not before the court and therefore the grant of declaratory and injunctive relief was improper.

GCR 1963, 111.1(1) provides that the pleadings must set down the facts upon which a party relies. Moreover, the pleadings may contain demands for declaratory and alternate relief. Plaintiffs did pray for injunctive relief and whatever relief the court deemed "just and equitable".

The issuance of a declaratory judgment is proper where an actual controversy exists. *Shavers v Attorney General,* 402 Mich 554; 267 NW2d 72 (1978). *Bloomfield Hills v Ziegelman,* 110 Mich App 530, 542; 313 NW2d 137 (1981), discussed the function of a declaratory judgment:

"GCR 1963, 521.1 vests circuit courts with the power to declare the legal rights of parties in cases of 'actual controversy'. The declaratory judgment rule was intended to be liberally construed to provide a broad, flexible remedy to increase access to the court. In the usual case, an actual controversy exists where a declaratory judgment is necessary to guide a litigant's future conduct in order to preserve his legal rights. *Shavers v Attorney General,* 402 Mich 554, 588; 267 NW2d 72 (1978)." (Footnote omitted.)

In the instant case an actual controversy exists. Defendant has repeatedly threatened to close Gladstone's unlicensed landfill. The plaintiffs cannot develop a systematic plan of solid waste disposal until apprised of their legal duties. Therefore, the issuance of a declaratory judgment was proper.

The last issue on appeal is whether the trial court erred in requiring defendant to issue an operating license to the City of Gladstone and to issue a construction permit to the City of Escanaba.

MCL 299.412; MSA 13.29(12) requires that the Director of the Department of Natural Resources make a final decision on a construction permit for a proposed solid waste disposal area within 120 days after receipt of the application. Failure to act within the time period results in the automatic issuance of the permit. Defendant failed to act on the application of the County of Delta within the

statutorily prescribed period. Therefore, the permit automatically was granted. Moreover, the permit properly is accorded to Delta County without the 31 stipulations the Department of Natural Resources attached to it. As discussed above, the 31 stipulations were invalid.

We find no error in the trial court's order that defendant issue plaintiff City of Gladstone a license to operate a landfill or in the alternative to prove that the City of Gladstone's unlicensed landfill operation was causing serious pollution. The conditions and equities existing at the time of trial warranted the order. *Miller v Magline, Inc,* 76 Mich App 284; 256 NW2d 761 (1977).

Based on the above, the decision of the trial court is affirmed.